UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| R. PEACHER, | ) |
|         Plaintiff, | ) |
| v. | ) No. 1:20-cv-02997-JPH-DML |
| MICHAEL CONYERS, et al. | ) |
|         Defendants. | ) |

**ORDER GRANTING PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Robert Peacher filed this action alleging that the prison and medical staff at Pendleton Correctional Facility have been deliberately indifferent to his facial neuropathy. He seeks injunctive relief in the form of either (1) a ceramic-blade electric trimmer or (2) thrice-weekly shaves by the prison barber. Mr. Peacher has filed a motion for preliminary injunction seeking the same relief. For the reasons that follow, the Court finds that preliminary injunctive relief is warranted.

## I.   Background

Mr. Peacher asserts that due to facial neuropathy, the growth of facial hair causes him significant pain. Dkt. 61-1 at 13, ¶¶ 3–4 (Peacher declaration). Simply shaving, however, does not solve the problem because a shave with most razors causes folliculitis that makes the neuropathy worse. *Id.* ¶¶ 4–5. Mr. Peacher has found two types of shaves that avoid this problem: (1) a shave with a ceramic-blade electric trimmer or (2) a shave from the prison barber. *Id.* at 13–14, ¶¶ 4–10; *see* dkt. 61-1 at 10–12 (identifying the ceramic-blade trimmer).

1

Beginning at the latest on June 6, 2019, Mr. Peacher had an order from prison medical staff to receive a barber shave three times per week. Dkt. 14 at 4; *cf.* dkt. 61-1 at 4–5 (February 2017 email from medical staff directing twice-weekly shaves). On October 30, 2020, a prison doctor cancelled that order. Dkt. 14 at 4. Mr. Peacher borrowed electric razors from other prisoners to see if they worked for him, but they did not. Dkt. 61-1 at 13, ¶ 6.

Within days, Mr. Peacher filed a healthcare request explaining that the electric razor he needs to avoid folliculitis is not available for purchase on commissary. Dkt. 62-1 at 1. The medical staff response was "Describe what shaver you need in writing to go to administration." *Id.* Mr. Peacher submitted another healthcare request the next day. This time, the staff response was "Barber shaves re-instituted until acceptable razor can be received for use." *Id.* at 2; *see also id.* at 4 (note from "Dr. K" indicating that Mr. Peacher "may restart barber shaves until razor is in hand").[1]

Also on November 13, 2020, apparently before Mr. Peacher received the response above, Mr. Peacher filed another healthcare request asking for a medical shave order. *Id.* at 5. The response was "This has been addressed." *Id.*

Mr. Peacher asserts, and the defendants do not dispute, that prison staff did not resume barber shaves.

---

[1] The scanned copy of this note on the Court's docket is illegible. The defendants do not dispute the accuracy of Mr. Peacher's transcription, dkt. 66 at 3, and the transcription is consistent with the few legible portions of the scanned copy.

## II. Preliminary Injunction Standard

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). The plaintiff first must show that "(1) without this relief, it will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of prevailing on the merits of its claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.*

Because Mr. Peacher is a prisoner, the Prison Litigation Reform Act (PLRA) "circumscribes the scope of the court's authority to enter an injunction." *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

## III. Discussion

### A. Likelihood of Success

"A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (quotation marks omitted). A "better than negligible" likelihood of success is not enough. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020). The precise likelihood of success required depends in part on the balance of harms: "the more likely the

plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

The Eighth Amendment's prohibition against cruel and unusual punishment creates a right to adequate medical care for incarcerated persons. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021); *see Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). "To prove a violation of that right, a plaintiff must prove that a defendant actually knew of a serious health need and acted with deliberate indifference to the plaintiff's suffering." *Howell*, 987 F.3d at 653.

The defendants argue that Mr. Peacher has failed to show likelihood of success on the merits because medical professionals have determined that Mr. Peacher's condition does not require special treatment: "[Mr. Peacher] disagrees with the medical professionals' determination that an order for shaves is not warranted. State Defendants are prison officials and not medical professionals—they reasonably must rely upon the medical professionals at the facility to render appropriate medical treatment for inmates held in the facility." Dkt. 59 at 6.

But after the defendants filed their response to Mr. Peacher's motion for a preliminary injunction, Mr. Peacher designated two November 2020 notes from medical staff to reinstate barber shaves until Mr. Peacher has an acceptable razor.[2] Dkt. 62-1 at 2, 4. These notes, combined with the prior orders in effect

---

[2] The Court recognizes that Mr. Peacher has provided this evidence late in the game and that he has a record of falsifying evidence, *see Peacher v. Talbot*, 840 F. App'x 37 (7th Cir. 2021). But the defendants have not moved for leave to file a surreply. Nor have they

4

from June 2019 through October 2020, dkt. 14 at 4, support Mr. Peacher's assertion that he has a serious medical condition that requires specialized treatment. They also support his assertion that prison staff knew of his condition and medical staff's directions, yet chose to deny him that treatment.

### B. Irreparable Harm and Lack of Traditional Legal Remedies

"Harm is considered irreparable if it cannot be prevented or fully rectified by the final judgment after trial." *Whitaker by Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034, 1045 (7th Cir. 2017) (cleaned up).

The defendants argue that Mr. Peacher has not shown a threat of irreparable harm because (1) folliculitis is a mere "minor inconvenience," not a source of serious harm, and (2) Mr. Peacher has not shown that the electric razors in the prison commissary cause folliculitis. Dkt. 59 at 7–8.

The defendants' first point is not well taken. Folliculitis may be a minor inconvenience in many instances, but Mr. Peacher has shown that folliculitis causes him serious pain because of his facial neuropathy.

The defendants' second point seizes on a line from a Mayo Clinic webpage discussing folliculitis, which indicates that one step for preventing folliculitis is to avoid sharing razors, towels, and washcloths. Dkt. 59 at 8. From this, the defendants conclude that "there is no indication whether the alleged folliculitis that Plaintiff may experience is caused by the razors made available to him by

---

taken any other action to challenge the authenticity of Mr. Peacher's evidence. The Court therefore treats it as authentic for purposes of this motion.

the facility in and of themselves or by his admitted use of razors that belong to other offenders." *Id.* But, again, the prison medical staff have indicated otherwise. For more than a year, they ordered that Mr. Peacher either receive barber shaves or the ceramic-blade razor he has identified. Dkt. 14 at 4; dkt. 62-1 at 2. This is strong evidence that Mr. Peacher would suffer irreparable injury if he were forced to use a different razor.

### C. Public Interest and Balancing Harms

The defendants argue that "requiring the Defendants to purchase his requested razors would harm the division of labor inherent to the prison system and fails to take into account the facility's necessary safety and security concerns." Dkt. 59 at 9. But they have provided no evidence that the electric razor Mr. Peacher seeks is more of a security threat than the other electric razors already available for commissary purchase. And they offer no argument, let alone evidence, that allowing Mr. Peacher to resume barber shaves would pose a safety or security risk.

The Court recognizes that "excessive judicial involvement in day-to-day prison management" is disfavored. *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020). But here, the modest preliminary injunctive relief that Mr. Peacher seeks will not be complex, costly, or difficult to administer, nor would it present safety concerns. And it would merely reinstate the status quo that was previously established by the prison's own medical provider with no apparent difficulty from at least June 2019 through October 2020. Both the

balance of harms and the public interest therefore weigh in favor of granting a preliminary injunction.

### IV. Scope of Relief

Based on the evidence before the Court, all applicable factors weigh in favor of preliminary injunctive relief.

The injunction will not apply to defendant Dr. Pierce, who no longer has any "control or involvement with the medical care provided to inmates incarcerated inside the Indiana Department of Corrections." Dkt. 68-1 at 1, ¶ 5 (Pierce declaration).

Preliminary injunctive relief related to prison conditions "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The preliminary injunction will automatically expire 90 days after its issuance. *Id.* Mr. Peacher may request that it be renewed no later than **14 days** before the injunction expires.

The preliminary injunction will include the following terms:

> Defendants Michael Conyers, Harold Councellor, and Matthew Vandine, in their official capacities, shall ensure that Mr. Peacher receives shaves by the prison barber three times per week unless and until he is provided regular access to a ceramic-blade electric razor. The defendants shall notify the Court of their compliance no later than **7 days** following issuance of this Order.

## V.  Conclusion

Mr. Peacher's motion for preliminary injunction, dkt. [45], and motion for ruling, dkt. [65], are **GRANTED**. The preliminary injunction will issue in a separate order. *See* Fed. R. Civ. P. 65(d)(1)(C).

**SO ORDERED.**

Date: 2/17/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

R. PEACHER
881627
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Conner Ross Dickerson
INDIANA ATTORNEY GENERAL
conner.dickerson@atg.in.gov

Matthew Jacob Goldsmith
INDIANA ATTORNEY GENERAL
matthew.goldsmith@atg.in.gov